## Case No. 3,231a.

### CORKS v. The BELLE.

[8 Betts, D. C. MS. 63.]

District Court, S. D. New York. Nov. 5, 1846.

COLLISION—STEAM AND SAIL.—EVIDENCE—BURDEN OF PROOF—COSTS.

[1. The burden is on the libellant to prove the fault of the vessel charged with causing a collision, and also to prove that his vessel was free from blame.]

[2. The general veracity of witnesses to a collision should not be impeached because of their different statements of attendant incidents, as the confusion and disturbance consequent on the occurrence would naturally tend to prevent such distinct observation as would enable the eyewitnesses to give concurrent descriptions.]

[3. Where, by a preponderance of evidence, it does not appear that a collision between a sloop and steamboat charged as the cause thereof was due to any want of skill or care on the part of the latter, it is unnecessary to inquire into the conduct of the sloop, as failure to prove the fault of the steamboat necessitates a dismissal of the libel.]

[4. There having been strong probable cause for the action, and the sloop having sustained the principal injury, no costs should be awarded against her.]

[In admiralty. Libel by Isaac Corks, owner of the sloop Hoaxer, against the steamboat Belle, for damages sustained by collision.]

PER CURIAM. The owner of the sloop Hoaxer brings this action of collision for damages received from the steamer. The two vessels came together in the nighttime, last May, on the North river, and nearly opposite to Cold Spring. The points of collision were the starboard bow of the sloop and the larboard part of the steamboat, aft her wheel house.

The testimony presents the usual discordance in the statements given of the relative positions of the two vessels, and of the causes leading to the accident. The libellant, of course, has the burthen on himself of making out, by preponderance of evidence, that the steamboat was in fault, and that the collision was not induced by any conduct blamable on the part of the sloop, and that she could not, under the circumstances, have avoided it. The captain of the sloop, and his two men on board, agree in fixing her position, just preceding the collision, east of the middle of the river, heading directly up the river, on a S. E. wind. The two men also state that the Belle was running down west of the middle of the river, and one of them says on the west shore. They assign, as the cause of the collision, a sudden change of course by the Belle, veering nearly eastwardly, and running directly across the bows of the sloop, and east of the middle of the river. The general veracity of these witnesses is not to be affected by the different relations they give of the incidents attending the collision. The alarm necessarily accompanying such an occurrence, at the time and place, would naturally occasion confusion and disturbance on both sides; and it is not to be expected that witnesses will preserve such self-possession or distinctness of observation or recollection as to enable them to exactly concur in their descriptions of what they saw. The two men (Atkins and Lost), it would appear, were both engaged steering the sloop. Atkins says, when he saw the steamboat close to him, she was coming, bow on, to the sloop's larboard side, and about

midships. That he kept the sloop away, which changed her bow from larboard to starboard towards the stern, and brought the bowsprit under her wheel guards. The steamer crossed the sloop's bows, and, by the blow, turned her head down the river. Lost, the other pilot, says that when the Belle was 50 yards off, the sloop was ordered to keep away, and he obeyed the order, which brought her head about west; the Belle was steering directly east, across the bows of the sloop. It is manifest that, if the idea of this last witness was accurate, the two vessels, running in opposite directions, on the same, or parallel lines, must either strike directly head and head, or come together side by side; and he must, accordingly, have misapprehended the effect of his own manoeuver, or the course the Belle was making. But the evidence on the part of the steamboat, reverses the relative position given the vessels by those for the libellant, and shows the sloop was west of the middle of the river, and the Belle in the middle, or nearly so, and east of the sloop, so as to have the course she was running leave the sloop a clear berth to the west. Brett, Adams and Germain, swear the sloop was west of the Belle. Foster, Ensign and Ostrom (the latter called by the libellants) corroborate their statement that the Belle was in the middle of the river, keeping her due course down.

Those of the witnesses who observed the course of the sloop speak of her as bearing off westwardly, or immediately up the river, but not in the way of the steamer till she jibed. When that manoeuver was made, her head was brought round eastwardly, and she continued off about N. E., and directly towards the steamer. Brett, one of the pilots of the steamboat, says the sloop jibed at a distance of 150 yards or less from the Belle: Adams a deck hand, thinks she was within ¼ of a mile or more, at jibing: Germain, 2d engineer, saw her jibe, and immediately the bell rang to stop the boat, and the engine was instantly stopped. Atkins thinks the sloop jibed about a mile from the Belle, and that the collision was 20 minutes after. Lost says it was 20 minutes after he had been ordered to keep away, and had turned the head of the sloop west, that she struck, and was 150 yards off when she jibed. Witnesses must not be held with positiveness in respect to time and distance and circumstances such as existed in this case. The combined velocity of the two vessels was computed at 18 miles the hour, and it is therefore most palpable that twenty minutes, as supposed by Atkins, could not have been occupied in passing a mile; nor that Lost kept away 20 minutes after the collision became threatening, or that he was 20 minutes passing 150 yards. Instead of a few yards, the boats would have run five miles in twenty minutes. The estimates made by the pilot of the Belle is much more rational, and is probably as correct as might be expected or required. He supposes the vessels 150 to 200 yards apart, when the sloop jibed; and, as Atkins says the effort to keep away by the sloop was when the vessels were nearly in the act of striking, it would seem rational to conclude the movement of the sloop northeasterly, as the effect of jibing, would throw her nearly on the track of the Belle. The distance of 150 to 200 yards would not exceed ⅛ of a mile, and, if the speed of the two boats was a mile in four minutes, less than a minute would bring them together after the jibing of the sloop. Such undoubtedly was the fact, and whether stopping the steamboat, or attempting to keep away the sloop before the wind, were the best possible modes of avoiding the danger, or lessening it, or some other proceeding would have availed better than either, the court will not now decide or inquire. Each vessel did what, under the exigencies, seemed, on board, best adapted to meet the peril; and courts are very cautious in substituting their own judgment, founded upon after views of the facts, as decisive of what was a reasonable and proper course of navigation or effect, at the instant, and under the circumstances in which a danger is presented to those navigating vessels. It is not necessary to go further then to inquire whether fault or want of due skill and care have been established against the steamboat, as the cause of the injury, and the propriety or good judgment of the conduct on board the sloop can be of no moment until the evidence fixes blame upon the Belle, and shows the injury to have resulted from her misconduct. And I think, most clearly, the libellant fails making that proof by a preponderance of evidence.

The weight of testimony is against the allegations of the libel. The steamboat was navigating in about the middle of the river, and it is disproved that she was east of the sloop, and it is certain that, whatever her deviation was from a direct course down the river, it was made more eastwardly for the purpose of avoiding the sloop. The collision was on the starboard side of the steamer, and of course, the sloop being, by the weight of evidence, shown to have been west of her, far enough off to be secured a full berth, it must have been occasioned by the jibing of the sloop, and then heading off rapidly into the track of the Belle. On the proofs as they stand, I accordingly find that the steamboat was not in fault, and that the libel must be dismissed. But as there was very strong probable cause for the action, and the injury was chiefly sustained by the sloop, I shall not order costs.